# BARK "SHETLAND" v. JOHNSON.

---

ADMIRALTY LAW; SHIPPING ARTICLES; CONTRACTS; CUSTOM.

1. The failure to insert in shipping articles before they are executed before a United States Shipping Commissioner the time at which each seaman is to be on board to begin work, in violation of R. S. U. S., Sec. 4511, as amended by the act of Congress of August 19, 1890 (26 Stat. 320) Secs. 4512, 4522, as amended by the act of December 21, 1898 (30 Stat. 755), and Sec. 4524, cannot be justified on behalf of the vessel by an alleged custom not to make a memorandum of the time until it is definitely fixed after the execution of the articles, and in the meantime to leave a blank space therefor to be filled in by the master of the vessel on sailing, as no custom can be tolerated which violates the law; and as the shipping articles constitute a contract for wages it is not competent for the master to fill up blank spaces so left in the shipping articles, so as to bind the seamen.

2. Such a disregard of the law by the master of a vessel will, in a proceeding in admiralty by seamen against the vessel for wages where the testimony is evenly balanced as to the time when the men were required to be on board, justify a decision in favor of the libellants.

3. Where, in such a proceeding, the men claim their wages from a date prior to the sailing date on the ground that they were told to be on board by such date, while on behalf of the vessel it is testified they were told to be in readiness to go on board when notified and their wages would begin on the day of sailing, and it is conceded that the vessel cleared at the custom-house but failed to sail for sometime owing to ice in port, it will be assumed that the master

furnished the collector of customs with a list of the crew before his vessel cleared as required by Sec. 4573, R. S. U. S., and as the vessel could not clear unless a crew had been secured, this fact will be held to corroborate the seamen that they were due to go on board about the date of clearance; and it will not be presumed that they were thereafter to be kept waiting indefinitely to suit the convenience of the master.

No. 1247.  Submitted February 11, 1903   Decided March 4, 1903.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia, sitting as a District Court of the United States, in an admiralty proceeding by seamen against a vessel for wages claimed to be due them.                                        *Affirmed.*

The COURT in the opinion stated the case as follows:

This is a suit in admiralty instituted by the appellees, who are seamen, in the Supreme Court of the District of Columbia sitting as a district court of the United States, against the bark " Shetland " and George W. Heath, its master, both of whom were found in the harbor of Georgetown, D. C., for alleged failure to pay certain wages and subsistence claimed by the appellees to be due to them.

On January 29, 1902, the bark " Shetland," owned in Boston, Massachusetts, was in the harbor of Philadelphia under George W. Heath, its master, loading a cargo for the port of Spain in the Island of Trinidad, in the West Indies, and intending a return voyage to the port of Georgetown (or Washington), D. C. She had finished, or was about to finish loading at the time; and within a day or two, as it would seem, she dropped down the Delaware river to Wilmington, in the State of Delaware, whence she cleared, or " partially cleared," according to the captain's words, whatever they may mean, on February 3, 1902. She was detained, however, at Wilmington, on account of the formation of ice in the Delaware river, until February 26, 1902, when she actually sailed on her voyage.

On January 29, 1902, three of the appellees, and on January 30, 1902, the other two, signed shipping articles before

the United States Shipping Commissioner in Philadelphia, or his deputy, to go on board the " Shetland " as seamen for the proposed voyage. The articles did not contain any statement of the time when they were to go on board, as the statutes of the United States require. The spaces where such entries should have been made were left blank, and a copy of the articles so imperfectly made up was handed to the master of the vessel. He filled up the blanks at the time when he sailed with the date of sailing, February 26, 1902. At the end of the return voyage the appellees were discharged in the harbor of Washington, and the captain proceeded, or offered, to pay them in full from February 26, 1902, to the end of the voyage. The seamen declined to accept this as payment in full, and claimed to be entitled to wages and subsistence also from January 31, 1902, at which time, as they claimed, they were told that they would be required to be on board, to February 26, 1902, during all of which time they allege they were held in waiting.

The question in issue, therefore, is whether the seamen were duly informed that they would be required to be on board on January 31, 1902, or whether the understanding was that their compensation would begin only on February 26, 1902, when they actually went on board and the bark was ready to sail on its voyage.

No agreement having been reached between the seamen and the captain of the vessel, the former instituted the present proceedings by filing their libel in admiralty and causing the vessel to be seized. Subsequently the vessel was released on the filing of the usual bond. The master answered the libel denying the right of the libellants. Soon afterwards the owners of the vessel came in, and asked to be made and were made codefendants with the master. They answered the libel by adopting the answer of the master as their own. Testimony was then taken, and upon hearing the court below decreed in favor of the libellants. The defendants have appealed to this court.

*Mr. D. W. Baker* and *Mr. W. J. Lambert* for the appellants.

*Mr. J. H. Ralston, Mr. F. L. Siddons,* and *Mr. E. A. Jones* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

Section 4511 of the Revised Statutes of the United States, as amended by the act of Congress of August 19, 1890 (26 Stat. 320), provides that:

" The master of every vessel bound from a port in the United States to any foreign port, or of any vessel of the burden of seventy-five tons or upward, bound from a port on the Atlantic to a port on the Pacific, or *vice versa,* shall, before he proceeds on such voyage, make an agreement in writing or in print with every seaman whom he carries to sea as one of the crew, in the manner hereinafter mentioned; and every such agreement shall be, as near as may be, in the form given in the table marked A in the schedule annexed to this title; and shall be dated at the time of the first signature thereof; and shall be signed by the master before any seaman signs the same, and shall contain the following particulars:

" First. The nature, and, as far as practicable, the duration of the intended voyage or engagement, and the port or country at which the voyage is to terminate.

" Second. The number and description of the crew, specifying their respective employments.

" Third. The time at which each seaman is to be on board to begin work.

" Fourth. The capacity in which each seaman is to serve.

" Fifth. The amount of wages which each seaman is to receive."

Section 4512 of the Revised Statutes provides:

" The following rules shall be observed with respect to agreements:

" First. Every agreement, except such as are otherwise specially provided for, shall be signed by each seaman in the presence of a shipping commissioner.

" Second. When the crew is first engaged the agreement

shall be signed in duplicate, and one part shall be retained by the shipping commissioner and the other part shall contain a special place or form for the description and signatures of persons engaged subsequently to the first departure of the ship and shall be delivered to the master.

"Third. Every agreement entered into before a shipping commissioner shall be acknowledged and certified under the hand and official seal of such commissioner. The certificate of acknowledgment shall be endorsed on, or annexed to the agreement, and shall be in the following form:

"'On this —— day of ———— personally appeared before me, a shipping commissioner in and for the said county, A, B, C, D, and E, F, severally known to me to be the same persons who executed the foregoing instrument, who each for himself acknowledged to me that he had read or had heard read the same; that he was by me made acquainted with the conditions thereof and understood the same; and that while sober and not in a state of intoxication he signed it freely and voluntarily for the uses and purposes therein mentioned.'"

Section 4522 of the Revised Statutes, as amended by an act of Congress of December 21, 1898 (30 Stat. 755), provides as follows:

"At the foot of every such contract to ship upon such a vessel of the burden of fifty tons or upward there shall be a memorandum in writing of the day and the hour when such seaman who shipped and subscribed shall render himself on board to begin the voyage agreed upon. If any seaman shall neglect to render himself on board the vessel for which he has shipped at the time mentioned in such memorandum without giving twenty-four hours' notice of his inability to do so," etc. (A penalty is prescribed).

Finally, section 4524 of the Revised Statutes provides as follows:

"A seaman's right to wages and provisions shall be taken to commence either at the time at which he commences work, or at the time specified in the agreement for his commencement of work or presence on board, whichever first happens."

These provisions of the statute law are cited partly on ac-
count of their direct bearing on the case before us and partly
because in connection with this case they seem to have been
deliberately disregarded in the matter of the omission from
them of any specification of the time at which the seamen,
who sue here as libellants, were to render themselves on board
of the vessel on which they had shipped. This disregard of
the law is stated in the testimony of some of the witnesses
for the defense to have been in accordance with a custom not
to make a memorandum of the time until it was definitely
fixed after the execution of the shipping articles and in the
meantime to leave a blank space therefor. It is hardly
necessary to say that the courts cannot tolerate a custom,
if there is such a custom, deliberately and wilfully to violate
the law, for such is the alleged custom in this case. The
statute expressly provides that before the shipping articles
are executed by any one they shall contain a statement of
" the time at which each seaman is to be on board to begin
work;" and any and all other provisions might as well be
omitted as this one. The shipping articles constitute a con-
tract in which the policy of the law and the express terms
of the statute require certain provisions to be inserted. It
is not competent for masters of vessels to disregard such re-
quirements or for shipping commissioners to tolerate such
disregard. A custom which would authorize such conduct is
not a custom but a conspiracy against the law, and the omis-
sion will be taken most strongly against the master of the
vessel. Nor is it competent for this latter to fill up the blank
spaces, as was done in this case, in such manner and to such
effect as to bind the seamen who shipped with him.

Without entering in detail into a consideration of the tes-
timony in this case, which would subserve no good purpose,
it is sufficient to say that the libellants with substantial agree-
ment testify that they were told that they would be wanted
on board on January 31, 1902 — that is, within two or three
days after the execution of the shipping articles; and that,
on the other hand, the witnesses for the defense substan-
tially agree that the time was left open and that the libellants

were told merely to keep themselves in readiness to go on
board whenever they were notified.  If the testimony were to
be regarded as equally balanced between the parties it would
not be improper, in view of the disregard of the law by the
master of the vessel, to adjudge the controversy in favor of
the libellants.   But there is a very decisive circumstance in
the case which seems to us to be conclusive on behalf of the
libellants.

It is conceded that the vessel cleared at the custom-house
on February 3, 1902, and that she was then loaded with her
cargo and ready for her voyage; and her subsequent failure to
proceed is alleged on behalf of the appellants to have been
due to the formation of ice in the river.   Now before a clear-
ance could be had at the custom-house the master of the vessel
must have delivered to the collector of customs a list of his
crew, supported by an affidavit on his part as to its correct-
ness.    Section 4573 of the Revised Statutes provides as
follows:

" Before a clearance is granted to any vessel bound on a
foreign voyage or engaged in the whale fishery the master
thereof must deliver to the collector of the customs a list con-
taining the names, places of birth and residence, and descrip-
tion of the persons who compose his ship's company; to which
list the oath of the captain shall be annexed that the list con-
tains the names of his crew, together with the places of their
birth and residence, as far as he can ascertain them; and the
collector shall deliver to him a certified copy thereof, for
which the collector shall be entitled to receive the sum of
twenty-five cents."

We must assume that the master of the vessel rendered this
list to the collector and received a certified copy thereof, ac-
cording to the statute.   How could he have done this if he
had not already secured his crew by a complete and binding
contract?   And how could there have been a complete and
binding contract if there had not been a definite understand-
ing in regard to the time at which the men were to come on
board?   This fact, therefore, of the clearance of the vessel
from the custom-house on February 3, 1902, fully corrobo-

D. C.]               Statement of the Case.

rates the statement of the seamen that they were then due to go on board; and it is not to be presumed that they were thereafter to be kept waiting indefinitely at the whim or caprice of the master, or to suit his convenience or the convenience of the owners of the vessel.

It is very clear that there was an understanding between these seamen on the one side and the captain or his agents — for the act is that of agents and the agency is fully shown — that these men were to go on board the vessel on or about the 31st day of January, A. D. 1902, as they claim was the fact; and that, if they were actually postponed to February 26, this was merely to subserve the convenience of the master of the vessel and they should not be subjected to the consequences of the delay.

We think that the decree of the Supreme Court of the District of Columbia in the premises was right, and that it should be *affirmed, with costs. And it is so ordered.*